Filed 7/24/25  P. v. Sims CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B335875 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA059763) |
| v. | |
| JERMAYNE LAMAR SIMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Daviann L. Mitchell, Judge.  Affirmed with directions.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In 2014, a jury convicted Jermayne Lamar Sims of two counts of assault with a deadly weapon and several other felonies, and it found true multiple sentencing enhancements. The court sentenced Sims to over 22 years in prison, including the upper four-year term for one of Sims's assault convictions.

In 2023, the court recalled Sims's sentence and resentenced him to 19 years in prison under Penal Code[1] section 1172.75, striking three 1-year prior prison term enhancements while reimposing the upper four-year term for the assault with a deadly weapon conviction. On appeal, Sims argues the court erred when it reimposed the upper term for his assault conviction because: (1) it relied on several aggravating sentencing factors that were not properly proven under section 1170, subdivision (b)(2); and (2) the lower term was the presumed sentence for his assault conviction. Sims also contends the court abused its discretion when it denied his request to dismiss his prior strike conviction and miscalculated his custody credits. We reject Sims's first three contentions but agree that the court failed to properly calculate his custody credits. We therefore remand the matter with directions for the court to determine the number of days that Sims has spent in actual custody and to prepare an amended abstract of judgment that reflects his total custody credits. In all other respects, we affirm.

## BACKGROUND

In February 2014, the People charged Sims with one count of inflicting corporal injury on the mother of his child (§ 273.5,

---

[1]     All further undesignated statutory references are to the Penal Code.

subd. (a); count 1), two counts of assault with a deadly weapon (§ 245, subd. (a)(1); counts 2 and 3), one count of misdemeanor vandalism (§ 594, subd. (a); count 4), one count of stalking (§ 646.9, subd. (b); count 5), one count of criminal threats (§ 422, subd. (a); count 6), two counts of felony vandalism (§ 594, subd. (a); counts 7 and 8), and one count of dissuading a witness from reporting a crime (§ 136.1, subd. (b); count 9). As to counts 1, 2, 3, and 5, the People alleged that Sims served three prior prison terms (§ 667.5, subd. (b)), suffered a prior strike conviction (§§ 667, subd. (c), 1170.12, subd. (c)), and suffered a prior serious felony conviction (§ 667, subd. (a)).

In May 2014, a jury convicted Sims of two counts of assault with a deadly weapon (counts 2 and 3), one count of stalking (count 5), one count of criminal threats (count 6), and one count of felony vandalism (count 7). The court sentenced Sims to 22 years, eight months in prison, including the upper term of four years for count 2, doubled to eight years under the "Three Strikes" Law, plus five years for the prior serious felony conviction enhancement and three years for the three prior prison term enhancements. The court awarded Sims 292 days of presentence custody credits.

In 2022, the California Department of Corrections and Rehabilitation (CDCR) referred Sims's case for resentencing under section 1172.75. The court appointed counsel to represent Sims and scheduled a resentencing hearing.

Sims filed a resentencing motion. He asked the court to strike his prior strike conviction, all three prior prison terms, and his prior serious felony conviction, and to reduce count 2, the principal term for his sentence, to either the low or middle term. Sims argued, among other things, that after the Legislature

enacted Senate Bill No. 567 (2021–2022 Reg. Sess.), which amended sections 1170 and 1170.1, the court could not reimpose an upper term sentence unless the aggravating circumstances supporting imposition of that term were stipulated to by the defendant or found true beyond a reasonable doubt by the trier of fact.

Sims presented evidence of his rehabilitation efforts while in prison. Sims submitted certificates of completion from prison-offered victim awareness, domestic violence, anger management, and Alcoholics Anonymous programs, as well as several letters commending Sims for his behavior in prison.

Sims also submitted his handwritten letter, in which he recounted being raised in a violent home with a mother, aunt, uncle, and cousins who used hard drugs. The adults in the home physically abused Sims and his younger sister when they did not have access to drugs. Around the age of 10, Sims left his family's home and was homeless for about six months. Eventually, Sims started living in group homes, where he was exposed to more violence.

Sims claimed that due to the nature of his childhood, he only cared about himself for much of his life, including after he was arrested for the underlying offenses. After his mother died while he was in custody, Sims decided to turn his life around and make amends to the people he hurt through his criminal conduct. He has since dedicated his life to changing the way people look at him, including through his participation in prison-offered self-help classes.

In November 2023, the court held a resentencing hearing. The court struck Sims's three prior prison term enhancements, while denying his request to strike his prior convictions.

4

The court sentenced Sims to 19 years in prison, including the upper four-year term for count 2.

Sims appeals.

## DISCUSSION

### 1. The court did not err when it reimposed Sims's upper term sentence for count 2

Sims contends the court violated section 1170, subdivision (b)(2), when it reimposed the upper four-year term for his assault with a deadly weapon conviction in count 2 because it relied on facts that he did not stipulate to and that the jury did not find true beyond a reasonable doubt. As we explain, section 1170 subdivision (b)(2)'s burden of proof requirement does not apply to resentencing proceedings under section 1172.75 where, as here, the defendant was originally sentenced to an upper term. The court, therefore, did not err when it reimposed an upper-term sentence at Sims's resentencing hearing.

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b), to make the middle term the presumptive determinate sentence. (*People v. Lynch* (2024) 16 Cal.5th 730, 742 (*Lynch*).) Now, courts may not impose an upper term sentence in the first instance unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, "have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2)–(3); *Lynch*, at p. 742.)

Senate Bill No. 483 (2021–2022 Reg. Sess.) also went into effect on January 1, 2022, and it created what is now section 1172.75. (Stats. 2021, ch. 728, § 3 [creating former § 1171.1]; Stats. 2022, ch. 58, § 12 [renumbering former § 1171.1

to section 1172.75].)  That statute renders legally invalid any prior prison term enhancement imposed before January 1, 2020, unless the enhancement was imposed for a prior sexually violent conviction, and it creates a resentencing procedure for defendants who are currently serving sentences that include a prior prison term enhancement.  (§ 1172.75, subds. (a)–(c).)  Once the trial court confirms that the underlying judgment includes an invalid prior prison term enhancement, the court must "recall the sentence and resentence the defendant."  (*Id*., subd. (c).) A defendant who is eligible for relief under section 1172.75 is "entitled to a ' "full resentencing." ' "  (*People v. Rogers* (2025) 108 Cal.App.5th 340, 354.)

Section 1172.75, subdivision (d), provides instructions for resentencing.  The court must appoint counsel to represent the defendant.  (*Id*., subd. (d)(5).)  The court may not impose a sentence longer than the one originally imposed, and the court must impose a lesser sentence than the original unless it "finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety."  (*Id*., subd. (d)(1).)  The court also must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (*Id*., subd. (d)(2).) In addition, the court is permitted to "consider postconviction factors" that speak to whether continued incarceration remains in the interest of justice, such as the defendant's physical condition and records of discipline and rehabilitation while incarcerated.  (*Id*., subd. (d)(3).)  Finally, "[u]nless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are

circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id*., subd. (d)(4).)

Sims argues the court was required to comply with section 1170, subdivision (b)(2)'s requirement that any fact, other than a prior conviction, that a court relies on to impose an upper term sentence must be stipulated to by the defendant or found true beyond a reasonable doubt by the jury. According to Sims, the court violated the Sixth Amendment when it relied on several aggravating sentencing factors that were not properly proven under section 1170, subdivision (b). We disagree.

Sims's recall of sentence and resentencing were triggered by section 1172.75, because his original sentence included now-invalid prior prison term enhancements. (*Id*., subd. (c).) Sims's resentencing, therefore, was governed by section 1172.75, subdivision (d).

Two recent decisions have addressed whether trial courts are required to comply with section 1170, subdivision (b)(2)'s burden of proof requirement under section 1172.75 when resentencing a defendant who was originally sentenced to an upper term. (See *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*); *People v. Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*).)[2] Those decisions are split.

---

[2] We asked the parties to submit supplemental briefs addressing how section 1172.75, subdivision (d)(4) should be

In *Brannon-Thompson*, the Third District held that section 1172.75, subdivision (d)(4) is an exception to section 1170, subdivision (b)(2)'s burden of proof requirement for the imposition of an upper term sentence. (*Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466–467.) The court noted that it is evident from the statute's plain language that "the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing." Section 1172.75, subdivision (d)(4) is, the court held, "an exception to the general rule that the trial court must apply ameliorative changes in the law at a section 1172.75 resentencing." (*Brannon-Thompson*, at pp. 466–467.)

In *Gonzalez*, the Sixth District held that section 1170, subdivision (b)(2)'s burden of proof requirement applies when reimposing an upper term at a section 1172.75 resentencing hearing. The court found that section 1172.75, subdivision (d)(4), is susceptible to more than one reasonable interpretation. (*Gonzalez*, *supra*, 107 Cal.App.5th at pp. 328–329.) Although the court agreed with *Brannon-Thompson* that the provision's plain language could be read as an exception to section 1170, subdivision (b)(2)'s burden of proof requirement for defendants who were originally sentenced to an upper term, the court concluded that section 1172.75, subdivision (d)(4), could also be read to limit the reimposition of an upper term sentence to only those defendants. (*Gonzalez*, at p. 329.) Under that reading, the court explained, the first clause of the statute defines the narrow

interpreted considering *Brannon-Thompson*, *Gonzalez*, and *Lynch*. Both parties filed supplemental briefs.

8

class of defendants eligible for an upper term sentence—i.e., only those who were originally sentenced to such a term—while the second clause incorporates section 1170, subdivision (b)(2)'s burden of proof requirement, which must be applied before the court may reimpose an upper term sentence. (*Gonzalez*, at p. 329.)

*Gonzalez* adopted the second interpretation of section 1172.75, subdivision (d)(4). The court looked to section 1172.75, subdivision (d)(2), which requires courts to " 'apply any other changes in law that reduce sentences or provide judicial discretion so as to eliminate disparity of sentences and . . . promote uniformity of sentencing.' " (*Gonzalez*, *supra*, 107 Cal.App.5th at p. 329, italics omitted.) Because Senate Bill No. 567's amendment of section 1170, subdivision (b) was a "change in law," the court reasoned, section 1172.75, subdivision (d)(2) requires courts to follow section 1170, subdivision (b)(2)'s burden of proof requirement before reimposing an upper term sentence under section 1172.75, subdivision (d)(4). (*Gonzalez*, at p. 329.)

*Gonzalez* also looked to the California Supreme Court's recent decision in *Lynch*. To interpret section 1172.75, subdivision (d)(4), as an exception to section 1170, subdivision (b)(2)'s burden of proof requirement, *Gonzalez* explained, "would run afoul of the Sixth Amendment implications identified" in *Lynch*. (*Gonzalez*, *supra*, 107 Cal.App.5th at p. 330.) As *Lynch* held, " '[t]he aggravating facts that would "justify" an upper term sentence [citation] are the same facts that "expose" the defendant to imposition of that sentence in the trial court's discretion. [Citation.] Stated another way, under [section 1170, subdivision (b)(2),] the aggravating facts used to "justify"

an upper term sentence are "necessary to [its] imposition," [citation], and effectively function like elements of a crime.' " (*Gonzalez*, at p. 330, quoting *Lynch*, *supra*, 16 Cal.5th at p. 760.) Thus, *Gonzalez* reasoned, "the statutory interpretation for section 1172.75, subdivision (d)(4), which simply *restricts the scope of defendants eligible to receive the upper term*, allows [courts] to read the statute in a manner that is internally consistent and avoids running afoul of the Sixth Amendment." (*Gonzalez*, at p. 330.)

We decline to follow *Gonzalez* and agree with *Brannon-Thompson*'s interpretation of section 1172.75, subdivision (d)(4). That statutory provision is clear and unambiguous. The first clause—"Unless the court originally imposed the upper term"— expressly excepts a class of defendants—those originally sentenced to an upper term—from the second clause's burden of proof requirement. Thus, if a defendant was originally sentenced to an upper term, section 1172.75, subdivision (d)(4) allows the court to reimpose the upper term at resentencing, without needing to engage in any factfinding or to otherwise comply with section 1170, subdivision (b)'s burden of proof requirements for imposing an upper term sentence. (See *Brannon-Thompson, supra*, 104 Cal.App.5th at pp. 466–467.)

Our reading of section 1172.75, subdivision (d)(4), does not conflict with the Sixth Amendment. As the Supreme Court explained in *Lynch*, the Sixth Amendment prohibits imposition of an upper term sentence that exceeds the statutory maximum sentence that a court may apply without relying on facts, other than prior convictions, that were not found true beyond a reasonable doubt by a jury or admitted by the defendant. (*Lynch, supra*, 16 Cal.5th at p. 747.) Thus, " ' "[t]he relevant 'statutory

10

maximum' " . . . "is not the maximum sentence a judge may impose after finding additional facts, but the maximum [the judge] may impose *without* any additional findings." ' " (*Ibid.*, quoting *Cunningham v. California* (2007) 549 U.S. 270, 274–275.) In other words, if a statute authorizes imposition of an upper term sentence without requiring the court to rely on facts that were not found true by a jury or stipulated to by the defendant, imposition of such term does not violate the Sixth Amendment. (*Lynch*, at p. 747.)

That is how section 1172.75, subdivision (d)(4) operates. In a case like this one, where the defendant was originally sentenced to an upper term, section 1172.75, subdivision (d)(4), allows the court to reimpose that same term without engaging in additional factfinding by exempting the case from section 1170, subdivision (b)(2)'s burden of proof requirement. Put another way, section 1172.75, subdivision (d)(4) makes the upper term the maximum sentence that the court may impose without additional factfinding for defendants who originally were sentenced to an upper term. (See *People v. Mathis* (2025) 111 Cal.App.5th 359, 373, 374 ["Where, as here, the trial court elects to retain an upper term sentence that complied with the Sixth Amendment when originally imposed, the court need not engage in any additional factfinding under section 1172.75, subdivision (d)(4)"].)

In short, the court was not required to comply with section 1170, subdivision (b)(2)'s burden of proof requirement before it reimposed Sims's upper term sentence for count 2. The court, therefore, did not violate Sims's Sixth Amendment rights when it calculated his sentence by relying on aggravating sentencing factors to which he did not stipulate and that were not found true beyond a reasonable doubt by the jury.

11

## 2. The court did not abuse its discretion when it declined to impose the lower term for count 2

Sims next contends the court erred when it did not impose the lower term of two years for his assault with a deadly weapon conviction in count 2. He argues the court was required to impose the lower term under section 1170, subdivision (b)(6), because he presented evidence that his physical trauma as a child contributed to the offense. This argument lacks merit.

The court refused to impose a term lower than the upper term for count 2, finding by clear and convincing evidence that doing so would "endanger public safety." The court found that Sims's claim that he suffered physical trauma as a child lacked credibility because he did not provide any supporting statements from "family members, friends, [or] interviews" or documentation such as "police reports, [dependency] reports." The court also found that Sims presented "nothing" to show that his childhood trauma contributed to his underlying offenses. Moreover, the court explained, several aggravating sentencing factors justified re-imposing the upper term for count 2. Based on the violent and "egregious" nature of several of Sims's underlying offenses, as well as his long and violent criminal record, the court reasoned it would not be appropriate to lower his sentence beyond striking the three 1-year prior prison term enhancements. Finally, the court found that Sims's recent progress toward rehabilitation in prison did not outweigh the aggravating circumstances such that it would be appropriate to impose a lower sentence.

Effective January 1, 2022, Senate Bill No. 567 (2021–2022 Reg. Sess.) amended section 1170, subdivision (b)(6), to make the lower term the presumptive sentence if, among other things, the defendant has experienced psychological, physical, or childhood

12

trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence, and that such trauma was a contributing factor in the commission of the underlying offense.  (§ 1170, subd. (b)(6).)  The court may impose a sentence higher than the lower term if it "finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (*Ibid*.)  "[T]he mere fact a defendant is young or has suffered past trauma is insufficient—either or both must be 'a contributing factor in the commission of the offense' for the low term presumption to apply." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765 (*Knowles*).)

We review a trial court's sentencing decisions for abuse of discretion.  (*Knowles*, *supra*, 105 Cal.App.5th at p. 764.)  The court generally has wide discretion to select an appropriate sentence while weighing aggravating and mitigating factors. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.)  A court abuses its discretion when it acts arbitrarily and capriciously, relies on improper matters, or is unaware of the scope of its discretion such that it does not exercise its discretion at all. (*Knowles*, at p. 765.)

Sims has not shown the court abused its discretion when it refused to impose a lower term sentence for count 2 under section 1170, subdivision (b)(6).  The court acknowledged that Sims presented at least some evidence that he suffered physical trauma as a child, but it noted that Sims provided no evidence linking his childhood trauma to his assault with a deadly weapon conviction.  Further, it found that the evidence of any trauma was greatly outweighed by the aggravating circumstances, such that imposing a lower term sentence would endanger public

13

safety.  In doing so, the court discussed what it found to be the egregious nature of the underlying offenses in this case, Sims's criminal history that includes several convictions involving violence, Sims's failure to remain crime free for significant periods of time after being released from custody on his prior convictions, and Sims's failure to take significant steps toward rehabilitation until only shortly before the underlying resentencing proceedings.  On this record, we cannot conclude the court abused its discretion in finding the aggravating circumstances outweigh the mitigating circumstances such that it would be contrary to the interests of justice to impose a lower term sentence for count 2.  (See § 1170, subdivision (b)(6).)

Sims argues the court erred in relying on numerous aggravating circumstances that were not found true beyond a reasonable doubt by the jury, including the way he committed the underlying offenses and several of the circumstances related to his criminal history, when it refused to impose a lower term sentence for count 2.  Sims points to no authority, and we are aware of none, that prohibits a court from relying on aggravating circumstances that were not found true by the jury when considering whether to impose a lower term sentence under section 1170, subdivision (b)(6).  While courts are expressly prohibited from considering certain aggravating circumstances that were not found true beyond a reasonable doubt by the jury when deciding whether to impose an upper term sentence in the first instance under section 1170, subdivision (b)(2), such a restriction does not appear in section 1170, subdivision (b)(6).  We therefore decline to impose such a restriction on a trial court when determining whether to impose a lower term sentence.  (See *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929

14

[declining to impose section 1170, subdivision (b)(2)'s burden of proof requirement into section 1170, subdivision (b)(6) as a prerequisite to declining to impose lower term sentence].)

Sims also argues the court erroneously found that his assault with a deadly weapon conviction was a "violent felony" when it explained why it refused to reduce his sentence for count 2. To be sure, assault with a deadly weapon is not listed as a "violent felony" under section 667.5, subdivision (c). But the court did not reference that statute when it stated that assault with a deadly weapon was a violent felony. Instead, the court spoke at length about Sims's violent and egregious conduct in committing the offense, indicating it was referring to the manner in which Sims committed assault with a deadly weapon when it referred to it as a "violent felony." In any event, to the extent the court did err in finding the offense qualified as a "violent felony," Sims fails to explain how he was prejudiced by that finding. As we just explained, the court found *numerous* aggravating circumstances outweighed the mitigating circumstance of the physical trauma Sims suffered as a child. Nothing in the record suggests the court would have imposed a reduced sentence had it not found the assault with a deadly weapon conviction was a "violent felony."

Finally, Sims argues the court should have imposed a lower term sentence for count 2 under section 1170, subdivision (b)(6), because he made significant progress toward rehabilitation while in prison. That mitigating factor, however, is not listed in section 1170, subdivision (b)(6), as one the court must consider when deciding whether to impose a lower term sentence. In any event, as we just explained, the court expressly considered evidence of Sims's rehabilitation while in prison, and it found

15

that such evidence was outweighed by the aggravating circumstances discussed above.

In short, Sims has not shown the court abused its discretion when it declined to impose a lower term sentence for his assault with a deadly weapon conviction in count 2.

3.    **The court did not abuse its discretion when it refused to strike Sims's prior serious felony conviction enhancements**

Sims next contends the court abused its discretion when it denied his motion to strike the prior strike allegation and the five-year prior serious felony enhancement under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) and section 1385. We disagree.

Under section 1385, a trial court may strike or dismiss a prior conviction allegation in the interests of justice. (*Romero*, *supra*, 13 Cal.4th at pp. 530–531; *People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).) The statute was recently amended to guide trial courts in exercising their discretion to dismiss sentencing enhancements. (*People v. Walker* (2024) 16 Cal.5th 1024, 1032 (*Walker*).)

Section 1385, subdivision (c), now provides that trial courts "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).) The statute also states that courts "shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would

16

endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (*Id.*, subd. (c)(2).)

Among the mitigating factors listed in section 1385, subdivision (c)(2), are the five that Sims relies on here: (1) application of the enhancements would result in a discriminatory racial impact; (2) multiple enhancements were alleged in the same case; (3) the underlying offenses were connected to prior victimization or childhood trauma; (4) none of the underlying offenses were violent felonies as defined in subdivision (c) of section 667.5; and (5) the enhancements are based on a prior conviction that is over five years old.  (See § 1385, subd. (c)(2)(A), (B), (E), (F), & (H).)

As our Supreme Court recently explained, section 1385, subdivision (c) does not require trial courts to dismiss an enhancement, absent a finding that doing so would endanger public safety, whenever a listed mitigating circumstance is proven.  (*Walker*, *supra*, 16 Cal.5th at p. 1029.)  Rather, even without a finding concerning public safety, trial courts "retain[] the discretion to impose or dismiss enhancements provided that it assigns significant value" to the presence of any listed mitigating factors.  (*Ibid.*)

We review a court's decision not to strike or dismiss a prior conviction allegation for abuse of discretion.  (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)  The party challenging the sentence must show " ' "that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary

17

determination to impose a particular sentence will not be set aside on review.' ' " (*Carmony, supra,* 33 Cal.4th at pp. 376–377.)

As a threshold matter, the court was not required to explain on the record that it considered the mitigating factors listed in section 1385, subdivision (c)(2), or to expressly find that striking the challenged enhancements would endanger public safety. (See *People v. Brugman* (2021) 62 Cal.App.5th 608, 637 [a trial court is " 'not required to state reasons for declining to exercise its discretion under section 1385' "].) In any event, as we just discussed, the court provided a detailed explanation for why it found that lowering Sims's sentence beyond striking the three 1-year prior prison term enhancements, including striking his prior serious felony conviction enhancements, would endanger public safety. The record supports the court's reliance on the violent and egregious manner in which Sims committed the underlying offenses, his long criminal history (including several assaultive offenses and other crimes involving violence), his failure to remain crime free for considerable lengths of time, and his failure to make a serious effort to rehabilitate until only shortly before the underlying resentencing proceedings. On this record, the court did not abuse its discretion when it denied Sims's motion to strike his prior serious felony conviction enhancements.

4. **The trial court must determine the number of days that Sims has spent in actual custody**

Sims next contends his abstract of judgment must be corrected to reflect the actual number of days that he spent in custody leading up to the resentencing hearing. We agree.

At Sims's original sentencing hearing in 2014, the trial court awarded him 292 days of presentence custody credits,

18

consisting of 146 days for actual time served in custody plus 146 days of conduct credits.  At the resentencing hearing held on November 15, 2023, the court ordered the CDCR to recalculate Sims's custody credits.  The amended abstract of judgment issued after the resentencing hearing shows that Sims was awarded only 293 days of custody credits, consisting of 147 days for actual time served in custody plus 146 days of conduct credits.

Every defendant "sentenced to prison for criminal conduct is entitled to credit against [him or her] for all actual days of confinement solely attributable to the same conduct." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 30 (*Buckhalter*).)  " '[T]he court imposing a sentence' has a responsibility to calculate the exact number of days the defendant has been in custody 'prior to sentencing,' add applicable good behavior credits earned pursuant to section 4019, and reflect the total in the abstract of judgment." (*Ibid*.)  When the defendant's sentence "is modified while in progress," the trial court must credit the defendant "with all *actual* days" he or she spent in custody up to that time and award "such credits in the new abstract of judgment." (*Id*. at pp. 37, 40–41.)

Here, the trial court did not calculate the actual number of days Sims spent in custody up to the date of the resentencing hearing on November 23, 2023.  Instead, the court ordered CDCR to make that calculation.  It does not appear that the CDCR made that calculation, as the abstract of judgment issued after the November 2023 resentencing hearing incorrectly reflects that Sims was awarded only one additional day of actual custody credit from the time he was originally sentenced in 2014, nearly a decade short of the actual custody credits to which Sims was entitled.  Because the trial court, and not CDCR, was required to

19

calculate Sims' custody credits following resentencing (see *Buckhalter*, *supra*, 26 Cal.4th at p. 37), the matter must be remanded so that the court may calculate the correct custody credits and prepare a new abstract of judgment (see *People v. Rojas* (2023) 95 Cal.App.5th 48, 55).

## DISPOSITION

The matter is remanded with directions to the trial court to determine the number of days that Sims has spent in actual custody and to prepare an amended abstract of judgment and forward it to the California Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


VIRAMONTES, J.


WE CONCUR:


WILEY, Acting P. J.


MATTHEWS, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.